IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLAXO GROUP LIMITED and GLAXOSMITHKLINE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GENENTECH, INC. and CITY OF HOPE,<br><br>Defendants.<br>_____/ | No. C 10-00675 JSW<br><br>**ORDER GRANTING MOTION TO TRANSFER** |

Now before the Court is Defendants Genentech and City of Hope's motion to transfer the case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). The Court finds the matter suitable for disposition without oral argument. Accordingly, the hearing scheduled for April 16, 2010 is HEREBY VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Defendants' motion for transfer.

**BACKGROUND**

On October 8, 2009, Plaintiffs Glaxo Group Limited and GlaxoSmithKline LLC (collectively, "GSK") brought this action in the Southern District of Florida for declaratory relief. Defendants Genentech and City of Hope moved to dismiss for lack of subject matter jurisdiction or, in the alternative, to transfer the action to the Central District of California. After two extensions of time to respond, GSK dismissed the case on February 17, 2009 and

1 filed this action on the same day. On March 10, 2010, Defendants Genentech and City of Hope
2 moved to transfer the action to the Central District of California.

3 Plaintiff Glaxo Group Limited is an English corporation with a principle place of
4 business in the United Kingdom. (Complaint at ¶ 4.) Plaintiff GlaxoSmithKline is a Delaware
5 limited liability company with a principle place of business in Philadelphia, Pennsylvania. (*Id.*
6 at ¶ 5.) Plaintiffs GSK recently began marketing and selling Arzerra™, a treatment for patients
7 with chronic lymphocytic leukemia, in the United States. (*Id.* at ¶ 2.) Plaintiffs seek
8 declaratory relief that U.S. Patent No. 6,331,415 (the "Cabilly II Patent") is invalid,
9 unenforceable, and not infringed by GSK's Arzerra™. (*Id.* at ¶ 1.)

10 Defendants Genentech and City of Hope co-own the Cabilly II Patent. Genentech is a
11 Delaware corporation with its principal place of business in South San Francisco. (*Id.* at ¶ 6.)
12 City of Hope is a California not-for-profit organization with its principle place of business in
13 Duarte, California. (*Id.* at ¶ 7.) The Cabilly II Patent named five inventors: three that were
14 Genentech employees residing in the Northern District of California, and two that were City of
15 Hope employees residing in the Central District of California. Of the five inventors of the
16 Cabilly II Patent, one resides in the Central District of California, another resides in the
17 Northern District of California, and the three others are located in Israel, Pennsylvania, and
18 Oregon. (Declaration of Daralyn J. Durie in Support of Defendants' Motion to Transfer ("Durie
19 Decl."), ¶ 6.) GSK also identifies several witnesses that are or were employees of Genentech.
20 (*See* Opp. at 3-5.) The majority of these witnesses, including scientists and patent attorneys, no
21 longer work for Genentech. (*See id.*)

22 Defendants move to transfer in the interest of judicial efficiency primarily because other
23 related actions were litigated in the Central District of California before Judge Pfaelzer. The
24 Cabilly II Patent has been litigated before Judge Pfaelzer on two separate occassions.
25 MedImmune, Inc., a licensee under the Cabilly II Patent, brought a declaratory relief action
26 against Genentech and City of Hope seeking to have the Cabilly II Patent declared infringed,
27 invalid, and unenforceable. *See MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-cv-02567 (C.D.
28 Cal. filed Apr. 11, 2003). After five years of litigation, including extensive discovery, claim

2

1 construction, an appeal, and a decision by the United States Supreme Court, the case settled. In
2 May 2008, Centocor, another licensee of the Cabilly II Patent, filed a second declaratory
3 judgment action raising the same claim construction, validity and enforceability issues. *See*
4 *Centocor Inc. v. Genentech, Inc.*, No. 2:08-cv-03573 (C.D. Cal. filed May 30, 2008). That case
5 is currently pending, but the court has already completed claim construction and the parties
6 have engaged in document and deposition discovery. (Declaration of Victoria Q. Smith in
7 Support of Plaintiffs Opposition ("Smith Decl."), Ex. 8.) GSK has never been a party to either
8 of these cases, however, and alleges that the earlier cases before Judge Pfaelzer involved
9 different issues regarding infringement, invalidity, unenforceability, and damages.

The Court will address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.     Legal Standard.**

When reviewing motions to transfer under 28 U.S.C. § 1404(a), a procedural matter not related to patent law, courts should apply "the law of the appropriate regional circuit." *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003); *Winner Intern. Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally, for the convenience of the parties and witnesses, and in the interest of justice. The burden is on the moving party to demonstrate that the action should be transferred. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In order for a district court to transfer an action under section 1404, a court must make the following two findings: (1) that the transferee court is "one where the action might have been brought," and (2) "that the convenience of the parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotations omitted).

3

**B.  Transfer of Venue is Appropriate.**

    **1.  Venue is Proper in the Central District of California.**

There is no dispute in this case that the Plaintiffs could have brought this suit in the Central District of California. (Opp. at n.33.) Accordingly, Genentech and City of Hope have met their burden under the first prong.

    **2.  Interest of Justice.**

Considerations of the interests of justice include "whether efficient and expeditious administration of justice would be furthered." *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977); *see also Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). In deciding whether to transfer to a more convenient forum, the *Eli Lilly* court noted that the interests of justice, including judicial economy, "may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents*, 119 F.3d at 1565 (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986)). The court found that in a patent infringement case "in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues." *Id.* Similarly, in *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982), the court in a patent infringement case found that permitting multiple litigation of claims "could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear." *See also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (noting the need to avoid multiplicity of actions in patent suits). Thus, the interests of justice favor transfer to a forum that saves scarce judicial resources and also reduces the risk of conflicting decisions.

Here, judicial economy strongly favors transfer to the Central District of California. Judge Pfaelzer of the Central District of California has already heard portions of two related declaratory judgment actions brought against Genentech and City of Hope by other licensees of the Cabilly II Patent. *See MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-cv-02567 (C.D. Cal. filed Apr. 11, 2003); s*ee also*, *Centocor Inc. v. Genentech, Inc.*, No. 2:08-cv-03573 (C.D. Cal.

4

filed May 30, 2008). The *MedImmune* case has settled, but involved extensive litigation including discovery, claim construction, and a decision by the United States Supreme Court. The *Centocor* case is still pending, but the Court has already completed claim construction and the parties have engaged in document and deposition discovery. Judge Pfaelzer has already expended great resources in constructing and interpreting the Cabilly II Patent in the *MedImmune* case and the *Centocor* case. Allowing the same court to construe the same patent in this action would save substantial resources of both the parties and the court. Thus, transferring this related action to the same court is the most effective administration of justice.

Plaintiffs argue that they has never been a party to either of these cases and alleges that the earlier cases before Judge Pfaelzer involved different issues of infringement, invalidity, unenforceability, and damages. GSK argues that Arzerra™ is different than the alleged infringing products in *MedImmune* or *Centocor*. GSK is correct, but it is a distinction without a difference. Although the alleged infringing product is different, the allegedly infringed patent is the same. While Plaintiffs are not bound by the decisions in *MedImmune* or *Centocor* and are free to make their own arguments with regard to claim construction, invalidity, or unenforceability, Judge Pfaelzer's expertise with the Cabilly II Patent can only promote the efficient resolution of this conflict.

Patent cases involve highly technical factual determinations, and to require different courts to conduct such an extensive inquiry would be highly inefficient and could also lead to conflicting claim constructions. *See Pacesetter*, 678 F.2d at 96 ("[P]ermitting multiple litigation of these identical claims could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability was clear."). Because this case is closely related to the two cases in the Central District of California, sound judicial economy necessitates transfer to that district.

**3. Convenience Factors.**

The Court considers the following factors: plaintiff's choice of forum; convenience of the parties and witnesses; ease of access to sources of proof; local interest in the controversy; familiarity of each forum with the applicable law; and relative congestion in each forum. *See*

5

*Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

### a. Plaintiff's Choice of Forum.

Typically, a court should give a plaintiff's choice of forum great deference unless the defendant can show that other factors of convenience clearly outweigh the plaintiff's choice of forum. *Decker Coal*, 805 F.2d at 843. The fact that jurisdiction is proper in the Northern District of California is not dispositive of the issue of whether transfer is appropriate under section 1404(a). *See* 28 U.S.C. § 1404(a).

There are, however, factors that diminish the deference given to a plaintiff's choice of forum. For instance, "in contrast to the strong presumption in favor of a domestic plaintiff's forum choice, 'a foreign plaintiff's choice deserves less deference.'" *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 256 (1981)). Plaintiffs are foreign corporations based in the United Kingdom and Pennsylvania. Therefore, the Court gives less deference to GSK's choice of forum.

Furthermore, a plaintiff's second choice of forum is also entitled to less deference. *Wright v. Interbank Capital, Inc.*, No. C-99-0091, 1999 WL 354516, at *4 (N.D. Cal. May 19, 1999). While it is unclear on this record why GSK originally filed this action in Florida, it indicates that the Northern District of California was not their first choice of forum. Genentech and City of Hope assert that GSK dismissed the case and re-filed it here because they were "faced with imminent transfer to the Central District of California." (Mot. at 8.) GSK claims that they did so only to avoid litigating whether Florida was "convenient." (Opp. at 12.) While this Court is not convinced that GSK engaged in blatant forum shopping, the Northern District of California was not GSK's first choice of forum and is, therefore, entitled to less deference.

As deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases. *Chodock v. American Economy Ins. Co.*, 2005 WL 2994451, *3 (D. Ariz. 2005) (quoting *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)). Therefore, Plaintiffs' choice of forum is given little weight, because the Defendants have shown that GSK are foreign corporations and the Northern District

1  of California was their second choice of forum. On this record, the Court finds this factor
2  weighs in favor of transfer.

### b. The Convenience of the Parties and Witnesses.

In addition to considering Plaintiffs' choice of forum, the Court takes into account the relative convenience to all the parties and their witnesses. *See Decker Coal*, 805 F.2d at 843 (citing *Gulf Oil Corp.*, 330 U.S. at 508). GSK argues at length that this forum is more convenient because Genentech's headquarters are located in this District, many past and present employees of Genentech with relevant knowledge live in this district, and Genentech is certain to have a more active role in this litigation than City of Hope. In essence, GSK argues that it is more convenient for Genentech to litigate in this District. However, GSK does not argue that it is more convenient for GSK to litigate this case in this District rather than the Central District of California. The Court affords little weight to GSK's argument that it is more convenient for Defendants to litigate in this District when Defendants have requested to transfer this case.

GSK has also identified several witnesses that are located in this district that may no longer work for Genentech, including one inventor, and thus their attendance cannot be compelled by Genentech or the subpoena power of the Central District of California. (Durie Decl. ¶ 6.) Defendants argue that, because GSK initially filed suit in Florida, where the identified witnesses were not subject to compulsory process, they should not be permitted to argue that the compulsory process is now imperative. The Court notes the inconsistency, but finds that securing witnesses for trial through the compulsory process is still important. On balance, the convenience of the parties and witnesses weighs slightly against transfer.

### c. The Ease of Access to Sources of Proof.

Access to evidence is another factor that may favor transfer. *Gulf Oil Co.*, 330 U.S. at 508. GSK argues that Genentech's documents involving the Cabilly II Patent are located in this district. However, City of Hope's documents may reside in the Central District of California at their principle place of business. Additionally, both Genentech and City of Hope are already litigating the *Centocor* case, which involves the Cabilly II Patent, in the Central District of California. Presumably, much of the relevant documents and sources of proof relating to

7

research and development, as well as the prosecution of the Cabilly II Patent, have already been moved to the Central District of California. Finally, Plaintiffs are both located outside California and have not identified any of their documents that are located in either forum. Therefore, this factor is neutral.

### d. The Local Interest.

Another consideration in a decision to transfer venue is the local interest in having localized controversies decided at home. *Gulf Oil*, 330 U.S. at 508. GSK argues that Genentech's home office is located in this district and much of the events leading to the Cabilly II Patent occurred in this District. However, GSK has failed to show that *this* controversy is somehow localized to this District and, thus, there is a local interest in resolving this controversy here. Accordingly, the Court finds that this factor is neutral.

### e. Familiarity of Each Forum with the Applicable Law.

This case requires the application of Federal patent law. Accordingly, both this District and the Central District of California have equal familiarity with the applicable law. The Court finds that this factor is neutral.

### f. Relative Court Congestion in Each Forum.

The Defendants have shown that the median time for all case dispositions in the Central District is 6.7 months, versus 8.7 months in this District. *See* http://www.uscourts.gov/caseload2009/tables/C05Mar09.pdf. The Defendants have also shown that the median time to trial was 19.8 months in the Central District, versus 25.5 months in the Northern District. *See Id.* GSK responds that the related *Centocor* case has been pending for nearly two years without substantial fact discovery as evidence that the Central District is not less congested. GSK's logic is unsound. One long-pending related case does not prove that the Central District is less congested, nor does it show that the Central District is somehow less efficient at resolving this type of controversy.

The Court finds that the Central District of California is less congested than this District. The Court finds this factor weighs in favor of transfer.

8

**CONCLUSION**

The Court finds that Defendants have met their burden to show that the relevant factors that the Court must consider, including the interest of justice and the convenience factors, weigh in favor of transfer. Accordingly the Court GRANTS Defendants' motion to transfer. The clerk is directed to transfer this case forthwith to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

Dated: April 12, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE